UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

_____

| | |
|---|---|
| JANICE HAMMOND | CIVIL ACTION NO. 04-2602 |
| versus | JUDGE HICKS |
| | **REFERRED TO:** |
| GLEN LAMB, BOYD BROS. TRANSPORTATION, INC., and LINCOLN GENERAL INSURANCE COMPANY | **MAGISTRATE JUDGE HORNSBY** |

_____

# MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment (Doc. 39) on issue of liability filed by Plaintiff Janice Hammond ("Hammond"). Based on the following, the Motion for Partial Summary Judgment is **DENIED**.

## I. BACKGROUND

Hammond alleges that on the night of May 4, 2004, she was driving her car in the right, "slow" lane of traffic when her car was struck from the rear by an 18-wheel truck driven by Defendant Glenn Lamb ("Lamb"). Hammond contends that she has suffered certain injuries as a result of this accident and has sued for damages.

Lamb has since died from causes unrelated to the accident in question. His employer Boyd Brothers Transportation, Inc. and his insurer Lincoln General Insurance Company remain as defendants. Lamb was never deposed. However, Lamb did give his version of events to Louisiana State Trooper Chris Jones ("Trooper Jones"), who arrived on the scene shortly after the accident. Lamb claimed that he was driving in the right, "slow" lane and

that Hammond was driving in the left, "fast" lane of traffic. Lamb asserted that Hammond suddenly changed lanes right in front of him and that although he steered to the left to try to avoid hitting her car, he was unable to do so. Hammond, by contrast, claims that she was in the right lane throughout the period preceding the accident.

Hammond filed a motion for partial summary judgment on the issue of liability on January 31, 2006. She contends that Lamb's statements to Trooper Jones constitute inadmissible hearsay, and she further contends that no other substantive evidence contradicts her version of events. Hammond asserts that her own testimony, Trooper Jones' testimony, and the testimony of her accident reconstruction expert, Kelley Adamson, all unambiguously support her claim.

Defendants dispute Hammond's claim in a number of ways. First, they assert that Trooper Jones' testimony does not offer clear support for Plaintiff's claim. Second, they offer various arguments against Adamson's testimony. Third, they assert that the testimony of their own accident reconstruction expert, Dr. Mike James, supports Lamb's version of events. Finally, they offer evidence that Hammond was suffering symptoms of diabetic hyperglycemia on the night in question.

## II. ANALYSIS

### A. Summary Judgment Standard

Plaintiff bears the burden of proving her claims at trial. Thus, to prevail on a motion for summary judgment, she must establish evidence that would entitle her to a directed

verdict.  International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264 (5th Cir. 1991); Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 146 (3rd Cir. 1999).  All facts and inferences are viewed in the light most favorable to the non-moving party and all reasonable doubts are resolved in that party's favor.  Puckett v. Rufenacht, Bromagen & Hertz, Inc., 903 F.2d 1014, 1016 (5th Cir. 1990).  If factual issues or conflicting inferences exist, the court is not to resolve them; rather, summary judgment must be denied.  Id.  In making its determination, the court may look at "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any."  Fed. R. Civ. P. 56(c).

**B.  Rebuttable Presumption**

Plaintiff asserts that the burden of proof on the issue of liability rests upon Defendants because, pursuant to La. R.S. 32:81, a following motorist in a rear-end collision is presumed to have breached the duty to keep a reasonable and prudent distance.  Anderson v. May, 812 So.2d 81 (La. App. 5 Cir. 2002).  But this rebuttable presumption is inapplicable if, as Defendants contend, Hammond swerved in front of Lamb such that he could not avoid the collision.  Such alleged actions by Hammond arguably created a sudden emergency for Lamb.  A driver who exercises the degree of care required by law but who lacks sufficient time to consider his options in a sudden emergency is not considered negligent if he fails to choose the option that, upon later reflection, is determined to be best.  Clark v. Natt, 748 So.2d 584, 586 (La. App. 2 Cir. 1999).

Moreover, even if Lamb were presumed negligent, the presumption of one party's

negligence does not dispose of the issue of comparative negligence. Moreau v. Burlington Northern Santa Fe, 919 So.2d 862, 864 (La. App. 3 Cir. 2006). Issues of negligence, contributory negligence, and proximate cause cannot typically be disposed of through summary judgment because they require a determination as to the reasonableness of the acts of the parties under the circumstances. Gross v. Southern Ry. Co., 414 F.2d 292, 296 (5th Cir. 1969).

**C. Trooper Chris Jones**

Hammond claims that Trooper Jones' testimony is consistent with her version of events. While Hammond's assertion may be true, Defendants argue that Trooper Jones' testimony is equivocal rather than definitive. Trooper Jones stated in his deposition that he "wasn't 100 percent sure – we couldn't really tell whether or not Ms. Hammond did cut in front of [Lamb] or if he just wasn't paying attention and he ran up on her." (Deposition of Chris Jones, pp. 37-38). Given its equivocal nature, and in view of the other summary judgment evidence discussed below, Trooper Jones' testimony does not provide a basis for summary judgment.

**D. The Accident Reconstruction Experts**

Kelley Adamson, Hammond's expert, investigated the accident and found that the right front section of Lamb's truck crashed into the left rear section of Hammond's car. He also found that these two vehicle sections were near parallel when they crashed. This and other evidence led Adamson to conclude that Hammond was in the right, "slow" lane when

her vehicle was struck, and that Lamb was the cause of the accident.

Defendants counter Adamson's testimony with a number of arguments. First, they note Adamson's admission that his conclusions are inconsistent with Trooper Jones' measurement of the distance that Hammond's car traveled after being hit. (Deposition of Kelley Adamson, pp. 121-124). Second, they point out that Adamson could not completely foreclose the possibility that the accident was partially Hammond's fault. (Deposition of Kelley Adamson, pp. 136-137). Finally, Defendants assert that Adamson lacked much of the information that he typically uses in investigating accidents, and that the information he did use was insufficient to reach a definitive conclusion.

Defendants also offer the testimony of their own expert, Dr. Mike James. James analyzed all of the same evidence that Adamson examined, including the accident report written by Trooper Jones. James concluded, based on the angle between the two vehicles when they crashed and other evidence, that Hammond cut in front of Lamb and that Lamb steered to the left in an unsuccessful attempt to avoid Hammond's car. James' final conclusion was that the evidence supported Lamb's version of events, as related to Trooper Jones and recorded in the accident report.

Hammond offers various arguments in response to James' testimony. First, she emphasizes James' admission that he did not have enough information to determine whether Lamb could have avoided the accident. (Deposition of Mike James, pp. 36-38). Hammond claims that this admission contradicts James' statement that the evidence supported Lamb's

version of events.  Hammond's argument, though logical, is not a basis for summary judgment because it does not render unreasonable James' final conclusion that Lamb's version of events is correct.

Hammond also claims that James should not be considered an expert because he did not review Louisiana law while investigating this case, even though he has reviewed the law in the past.  This argument may (or may not) affect the weight to be given to James' testimony at trial, but it does not necessarily indicate that he is not qualified as an expert.  Additionally, Hammond's argument that Lamb should be held to a higher standard of care as a professional truck driver does not foreclose the possibility that Hammond is at least partially at fault.

Hammond also challenges Lamb's statements to Trooper Jones (which were relied upon by James) as inadmissible hearsay.  For the purpose of the summary judgment motion, however, the court finds that the better exercise of discretion is to consider the opinion, notwithstanding Hammond's evidentiary objection.  See Fed. R. Evid. 703.  See also Kunin v. Feofanov, 69 F.3d 59, 62 (5th Cir. 1995)(The court has discretion to deny a motion for summary judgment if it believes that a better course would be to proceed on and further test the merits.).  Hammond may reassert her argument on this point prior to trial in a timely filed motion in limine.

Both experts offer findings and conclusions that support their respective sides, but neither expert can rule out the possibility that the other side's version of events is correct.

The issue of which expert's analysis is correct is a genuine issue of material fact.

**E. Diabetic Hyperglycemia**

Defendants assert that there is also a genuine issue of material fact as to whether Hammond was experiencing symptoms of diabetic hyperglycemia, such as blurry vision, dizziness, and confusion, at the time of the incident. Such symptoms, Defendants claim, could have impaired Hammond's driving ability, contributed to the accident, and affected her memory.

It is uncontested that Hammond was diagnosed with non-insulin dependant diabetes mellitus in 1998; that Hammond's blood glucose level on the night of the accident was 491, as measured by the emergency medical services personnel on the scene; that 491 is, generally speaking, a high blood glucose level that could indicate diabetic hyperglycemia; and that the symptoms of diabetic hyperglycemia can include blurry vision, dizziness, and confusion.

Hammond contends that Defendants' assertion that she was suffering these symptoms on the night in question is pure speculation. Hammond notes the testimony of Dr. Michael Chanler ("Dr. Chanler"), who treated Hammond on the night of the accident, which indicates that symptoms related to high blood glucose levels are dependent on the person's blood glucose baseline. Hammond also notes the testimony of Dr. Tammy Jones ("Dr. Jones"), her regular doctor, to the effect that she has previously had blood glucose levels as high as 424 without neurological side effects.

Defendants make several arguments with regard to Plaintiff's contention. First, 491

is a higher blood glucose level than Hammond has previously had when she was considered alert. Second, Dr. Chanler testified that 491 would be a "terrible" blood glucose level for "anybody." (Deposition of Michael Chanler, p. 40). Third, Dr. Jones testified that Hammond had once complained of "blurred vision" and "dizziness" with a blood glucose level of only 349. (Deposition of Tammy Jones, pp. 37-41). Fourth, Ms. Hammond ate a meal at McDonald's shortly before the accident. (Deposition of Michael Chanler, p. 38). Fifth, Ms. Hammond has a history of non-compliance with doctor's orders concerning taking medication to control her blood glucose levels. (Deposition of Janice Hammond, p. 42). Sixth, the EMS responder at the scene of the accident noted that Ms. Hammond was "confused" and "disoriented." (Deposition of Michael Chanler, p. 15). Finally, Ms. Hammond's testimony concerning her own mental state that evening could be interpreted as indicating that she was nervous, scared, and/or confused. (Deposition of Janice Hammond, pp. 74 & 81-82).

In light of these arguments, and the summary judgment evidence, Defendants' assertion that Hammond's alleged symptoms of diabetic hyperglycemia contributed to the accident cannot be dismissed as pure speculation. Hammond's argument that the accident itself caused the spike in her blood glucose level does not foreclose the reasonableness of Defendants' interpretation of the evidence. The issue of whether Hammond's alleged symptoms of diabetic hyperglycemia contributed to the accident must be considered a genuine issue of material fact.

## III. CONCLUSION

As demonstrated above, the evidence in this case indicates that genuine issues of material fact exist, making summary judgment inappropriate. The court also finds that the better course of action is to proceed to trial and further test the merits of the dispute. <u>Kunin</u>, <u>supra</u>. Accordingly, Hammond's Motion for Partial Summary Judgment (Doc. 39) is **DENIED**.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 8th day of August, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE